UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID COLE,

        *Plaintiff*,

  v.

WALTER G. COPAN, Director, National
Institute for Standards and Technology, *et al.*,

        *Defendants*.

No. 19-cv-1070 (DLF)

## MEMORANDUM OPINION

David Cole brings this lawsuit against the National Institute for Standards and Technology and its director, Walter G. Copan (collectively, NIST), under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* (FOIA).  Cole claims that NIST violated FOIA by refusing to disclose, in response to his FOIA request, records of eight interviews concerning the emergency response to the September 11, 2001 terrorist attacks.  Compl., Dkt. 1.  Before the Court is the defendants' Motion for Summary Judgment, Dkt. 9, and Cole's Cross-Motion for Summary Judgment and for Discovery in the Alternative, Dkt. 12.  For the following reasons, NIST's motion is granted in part and denied in part, and Cole's motion is denied in part.

## I.   BACKGROUND[1]

On September 11, 2001, 2,749 people died in an attack on the World Trade Center; among the dead were 421 emergency responders affiliated with the New York City Police

---

[1] Where facts are undisputed, this opinion cites solely to NIST's Statement of Undisputed Facts, Dkt. 9-2, unless otherwise noted.  "In ruling on a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted . . . in [the non-moving party's] opposition to the motion."

Department (NYPD), the Fire Department of New York (FDNY), and other state and city agencies, as well as private volunteers.  Defs.' Statement of Facts, Dkt. 9-2, ¶ 1.  In 2002, NIST began investigating the collapse of the World Trade Center buildings under the authority of the National Construction Safety Team Act, 15 U.S.C. § 7301 *et seq.*, a statute that empowers NIST to investigate major building failures.  *Id.* ¶¶ 2–4.  Pursuant to an agreement with New York City and the National Commission on Terrorist Acts Upon the United States (the 9/11 Commission), NIST performed 116 first-person interviews with emergency responders, including 68 FDNY firefighters, 25 NYPD officers, 15 employees of the Port Authority of New York and New Jersey, and eight volunteers.  *Id.* ¶¶ 7–8.

In these interviews, the responders described their experiences and answered questions posed by NIST officials and the 9/11 Commission concerning emergency operations, building issues, and safety problems.  *Id.* ¶ 10.  Although portions of these interviews concerned the eyewitnesses' firsthand observations of the collapse of the towers, the focus of the interviews was the emergency response and the evacuation procedures.  Fletcher Decl., Dkt. 9-3, ¶¶ 13–14; Pl.'s Statement of Facts, Dkt. 12-2, ¶ 18.  NIST later published multiple reports that cited and quoted from notes taken during these interviews.  Defs.' Statement of Facts ¶¶ 11–12.  On January 26, 2010, then-Director of NIST Patrick Gallagher also issued a series of findings, pursuant to section 7(c) of the National Construction Safety Team Act, concluding that the disclosure of notes or other materials documenting NIST's interviews with FDNY, NYPD, and other New York City employees "would inhibit the voluntary provision of that type of information in this and future investigations."  *Id.* ¶¶ 14–19.

---

*Hawkins v. District of Columbia*, No. 17-cv-1982, 2020 WL 601886, at *4 (D.D.C. Feb. 7, 2020) (internal quotation omitted).

On November 2, 2011, David Cole, a private citizen, submitted a FOIA request to NIST for "[a]udio recordings of Interviews, and other records corresponding to footnote #'s 368 through 389" in one of the NIST reports (NC STAR 1-8) examining the emergency response operations on 9/11.  Correspondence, Dkt. 12-3, at 1; Pl.'s Statement of Facts ¶ 7.  The 22 footnotes referenced in Cole's request cite an August 2002 safety report by McKinsey & Company as well as nine different interviews (identified as nos. 1, 3, 19, 45, 54, 110402, 2110402, 2041604, and 1041704) that occurred between fall 2002 and spring 2004.  Defs.' Statement of Facts ¶¶ 20–22.  The agency searched desks, boxes, file cabinets, computers, storage areas, a repository, and its audiotape collection for the records Cole requested.  *See* Fletcher Decl. Ex. 2 (Search Checklist); Defs.' Statement of Facts ¶ 24.  As a result of these searches, the agency gathered nine sets of notes regarding the content of the interviews.  *Id.* ¶ 27; Fletcher Decl. ¶ 6.[2]

On December 15, 2011, NIST sent Cole an interim response, supplying him with a link to the publicly-available McKinsey report.  Defs.' Statement of Facts ¶ 26.  NIST's final response, on June 12, 2012, released the notes from a single interview (no. 1) but redacted the job title of the interviewee (a Port Authority employee).  *Id.* ¶ 27; *see* Fletcher Decl. ¶¶ 27–30.  NIST withheld in full the notes from the other eight interviews, Defs.' Statement of Facts ¶¶ 27–28, relying on FOIA Exemption 3, section 7(c) of the National Construction Safety Team Act, and Director Gallagher's January 26, 2010 findings, *id.* ¶¶ 13–19, 28, 30.  No audio recordings or transcriptions of these interviews were ever produced to Cole or listed in the *Vaughn* Index of withheld records.  Pl.'s Statement of Facts ¶¶ 12, 21.

---

[2] Although Cole asked for records regarding nine interviews, ten records are at issue because two different officials took notes during Interview 2041604.  Defs.' Statement of Facts ¶ 25.  For simplicity, this opinion will refer to the two records of Interview 2041604 as a single unit.

Cole filed an administrative appeal of NIST's decision on June 20, 2012.  Compl. ¶¶ 11–13.  On April 16, 2013, NIST denied this appeal, relying on Exemption 3 to withhold seven of the eight sets of notes.  Pl.'s Statement of Facts ¶¶ 15–17.  NIST acknowledged, however, that its June 12, 2012 final response had wrongly applied Director Gallagher's January 26, 2010 findings to one responsive record: an interview (#1041704) with an employee of Salomon Smith Barney who had witnessed the collapse of the towers.[3]  Pl.'s Statement of Facts ¶ 16; Compl. ¶¶ 14–15.  Nonetheless, NIST withheld notes of the interview under FOIA Exemption 6, rather than Exemption 3.  Pl.'s Statement of Facts ¶ 17; Compl. ¶¶ 20–25; Correspondence at 10–11.

On April 16, 2019, Cole filed suit against NIST and Copan in the United States District Court for the District of Columbia.  *See* Compl.  Cole seeks an injunction compelling NIST to provide all of the requested records in full.  *Id.* at 7.  NIST moved for summary judgment on November 21, 2019.  *See* Defs.' Mot. for Summ. J.  Cole filed a cross-motion for summary judgment and motion for discovery in the alternative on December 24, 2019.  *See* Pl.'s Mot. for Summ. J.

## II.   LEGAL STANDARDS

### A.  Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When a federal agency moves for summary judgment in a FOIA case, the court views all facts and

---

[3] Director Gallagher's January 26, 2010 findings did not apply to this interviewee because he was a private employee of Salomon Smith Barney rather than an employee of any of the various governmental organizations covered by the NIST policy (e.g., FDNY or NYPD).  *See* Defs.' Statement of Facts ¶¶ 14–19.

inferences in the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA.  *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

To prevail under Rule 56, a federal agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements."  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam) (internal quotation marks omitted).  The agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents," *Krikorian v. Dep't of State*, 974 F.2d 461, 468 (D.C. Cir. 1993) (internal quotation marks omitted), and must also explain why any of the nine enumerated exemptions listed in 5 U.S.C. § 552(b) applies to withheld information, *Judicial Watch, Inc. v. Food & Drug Admin*, 449 F.3d 141, 147 (D.C. Cir. 2006); *see also Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015) (agency bears burden of justifying application of exemptions, "which are exclusive and must be narrowly construed").

"The peculiarities inherent in FOIA litigation, with the responding agencies often in sole possession of requested records and with information searches conducted only by agency personnel, have led federal courts to rely on government affidavits to determine whether the statutory obligations of the FOIA have been met."  *Perry*, 684 F.2d at 126.  Agency affidavits are entitled to a presumption of good faith, *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and a court may grant summary judgment based on an affidavit if it contains reasonably specific detail and neither contradictory record evidence nor evidence of bad faith calls it into question, *see Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir.

2013).  The "vast majority of FOIA cases can be resolved on summary judgment."  *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

### B.  Motion for Discovery

Under Rule 56(d) of the Federal Rules of Civil Procedure, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery."  Fed. R. Civ. P. 56(d).  Discovery in FOIA cases is "rare" and "only appropriate when an agency has not taken adequate steps to uncover responsive documents."  *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003).  In the FOIA context, district courts have "broad discretion" to deny discovery, and courts permit discovery "only in exceptional circumstances where a plaintiff raises a sufficient question as to the agency's good faith in searching for or processing documents."  *Cole v. Rochford*, 285 F. Supp. 3d 73, 76–77 (D.D.C. 2018); *see also Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006) (denying discovery request as plaintiff offered no evidence of bad faith).

The D.C. Circuit has interpreted Rule 56(d) to require an "affidavit" that "satisf[ies] three criteria."  *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012); *see also Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Parkway Healthcare, LLC*, No. 17-cv-1676, 2018 WL 4705805, at *4 (D.D.C. Sept. 30, 2018).  The affidavit must (1) "outline the particular facts [the non-movant] intends to discover and describe why those facts are necessary to the litigation"; (2) "explain why [the non-movant] could not produce the facts in opposition to the motion for summary judgment"; and (3) "show the information is in fact discoverable*."* *Convertino*, 684 F.3d at 99–100 (internal alterations and quotation marks omitted).

III.    **ANALYSIS**

   **A. Adequacy of the Search**

   Cole's FOIA request sought "[a]udio recordings of Interviews, and other records corresponding to footnote #'s 368 through 389" in one of the reports NIST issued about its investigation of the World Trade Center attacks.  Correspondence at 1; Pl.'s Statement of Facts ¶ 7.  NIST located notes of the interviews referenced in these footnotes but asserts that it does not possess audio recordings or verbatim transcriptions of these interviews.  Pl.'s Statement of Facts ¶¶ 12, 21.  Cole contends that NIST's search was inadequate because NIST's own publications prove that audiotapes or transcriptions of these interviews once existed.  Pl.'s Mem. in Supp. of Mot. for Summ. J. (Pl.'s Br.), Dkt. 12-1, at 11–13.

   The adequacy of a search "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case."  *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  To survive a motion for summary judgment, an agency "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*."  *Weisberg*, 745 F.2d at 1485 (emphasis in original); *see also SafeCard*, 926 F.2d at 1201.

   "The agency has the initial burden to demonstrate the adequacy of its search, which it may meet by providing declarations or affidavits that are 'relatively detailed[,] . . . nonconclusory and submitted in good faith.'"  *Landmark Legal Foundation v. Envtl. Prot.*

*Agency*, 959 F. Supp. 2d 175, 181 (D.D.C. 2013) (quoting *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).  "Once the agency has provided a reasonably detailed affidavit describing its search, the burden shifts to the FOIA requester to produce 'countervailing evidence' suggesting that a genuine dispute of material fact exists as to the adequacy of the search."  *Hunton & Williams LLP v. U.S. Envtl. Prot. Agency*, 248 F. Supp. 3d 220, 236 (D.D.C. 2017) (citing *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007)).

NIST has met its initial burden by submitting agency declarations and documents that are detailed and nonconclusory.  *See, e.g.*, Fletcher Decl.; Shyam-Sunder Decl., Dkt. 14-1; Search Checklist.  NIST's FOIA/Privacy Act Officer coordinated the initial search for records responsive to Cole's request; that search followed NIST's "standard FOIA procedures" and was documented "contemporaneously with the search" in order to log the "locations searched" and the people searching.  Fletcher Decl. ¶¶ 1, 6.  NIST personnel searched agency files, personal files, computers, storage areas, audiotapes, and "any other place that might contain responsive material," *see* Search Checklist, but found no audiotapes or transcriptions of the interviews referenced in Cole's request, *see* Fletcher Decl. ¶ 6.  After this case was filed, NIST conducted a second search for audiotapes or transcriptions.  Shyam-Sunder Decl. ¶ 17.  NIST's lead investigator for the 9/11 investigation consulted with the manager in charge of the World Trade Center records, the director of the Engineering Laboratory, and three staff members involved in the original interviews.  *Id.* ¶¶ 1, 19.  All these officials confirmed that NIST does not possess audiotapes or transcriptions for the interviews.  *Id.* ¶¶ 20, 23–24.

Cole has not offered any countervailing evidence raising doubts about the adequacy of NIST's search.  Instead, he argues that the agency's representations are "inherently unbelievable" because "one would have thought that . . . [these records] would be readily

identifiable and easy to search for and locate." Pl.'s Br. at 12. But pure speculation is not

rebuttal. *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 241 F. Supp. 3d 14, 22

(D.D.C. 2017); *see also Kalmin v. Dep't of Navy*, 605 F. Supp. 1492, 1496 (D.D.C. 1985)

("possibility that certain evidence may be suspect" is not "proof that it is wrong" and cannot

avert summary judgment in the FOIA context). Cole gives no reason to distrust the agency's

sworn statement that the eight interviews at issue were either among those that were not

recorded, or if they were recorded, the recordings are no longer in NIST's possession. Shyam-

Sunder Decl. ¶¶ 23–24.

Instead, Cole highlights NIST's use of the word "transcribed" in one sentence of its 2005

NCSTAR 1-8 report. *See* Pl.'s Reply, Dkt. 18, at 7, 16; Pl.'s Statement of Facts ¶ 5. According

to that report, "[a]ll first-person interviews conducted by NIST were *transcribed* along with radio

and telephone communications of interest." NCSTAR 1-8, Dkt. 12-4, at 39 (emphasis added).

Cole speculates that the word "transcribed" means that "a court reporter or perhaps . . .

computer[]" created verbatim transcriptions "from audio" after the interviews were conducted.

*See* Pl.'s Reply at 7. But NIST asserts that the word "transcribed" refers only to the hand-written

notes originally taken during the interviews. *See* Defs.' Reply, Dkt. 15, at 3 n.4. Given the

ambiguity of "transcribed" in this context, NIST's explanation is a reasonable one, and Cole has

offered no other evidence that verbatim transcriptions exist.

Cole also objects to NIST's search on the ground that NIST never searched the ATLAS.ti

text-file database, even though it admitted that it had previously imported the interview records

into this computer program. Pl.'s Br. at 12. But NIST had no obligation to examine the

ATLAS.ti database because it no longer subscribes to the database. *See* Shyam-Sunder Decl.

¶ 22; *see also Penny v. U.S. Dep't of Justice*, 653 F. Supp. 2d 83, 85 (D.D.C. 2009) ("[a]n

agency is required to produce only those records in its custody and control at the time of the

FOIA request").  Moreover, the ATLAS.ti database only contained copies of the same interview

notes that the agency already located.  Shyam-Sunder Decl. ¶ 21.  On summary judgment, an

agency "must show that it made a good faith effort to conduct a search for the requested records,

using methods which can be reasonably expected to produce the information requested."

*Reporters Comm.*, 877 F.3d at 402 (internal quotation marks omitted).  NIST has done so here,

and Cole has not produced evidence showing a genuine dispute of material fact.

### B.  FOIA Exemption 3

NIST invokes FOIA Exemption 3 to justify withholding seven of the eight sets of

interview notes of FDNY, NYPD, and other New York City officials.  *See* Pl.'s Statement of

Facts ¶¶ 8, 15.  Exemption 3 permits the nondisclosure of materials that are "specifically

exempted from disclosure by [another] statute" so long as that statute "establishes particular

criteria for withholding or refers to particular types of matters to be withheld; and . . . specifically

cites this paragraph."  5 U.S.C. § 552(b)(3)(A)–(B).  NIST relies on section 7 of the National

Construction Safety Team Act, which cites FOIA Exemption 3.  *See* 15 U.S.C. § 7306(b)(i).

Neither party contests that the National Construction Safety Team Act qualifies as a withholding

statute under FOIA Exemption 3.  *See* Compl. ¶¶ 8–17; *see also Quick v. U.S. Dep't of

Commerce*, 775 F. Supp. 2d 174, 180 (D.D.C. 2011) (withholding under the NCSTA is a

"straightforward application of FOIA Exemption 3").

15 U.S.C. 7306(c) prohibits "any agency receiving information from a Team or the

National Institute of Standards and Technology" from disclosing "voluntarily provided safety-

related information if that information is not directly related to the building failure being

investigated and the Director finds that the disclosure of the information would inhibit the

voluntary provision of that type of information."  15 U.S.C. § 7306(c).  And in January 2010, NIST's Director exercised his authority pursuant to this section to find that disclosure of interviews with FDNY, NYPD, and New York City officials "would inhibit the voluntary provision of that type of information in this and future investigations."  Defs.' Statement of Facts ¶¶ 14–19.  Those interviews constituted "voluntarily provided safety-related information." 15 U.S.C. § 7306(c).  The interviewees consented to testify before NIST, the 9/11 Commission, and the City of New York "concerning the emergency operations, building issues, and safety issues" involved with the 9/11 emergency response.  Defs.' Statement of Facts ¶ 10; *see also* NCSTAR 1-8 at 10–11 (stressing "the voluntary nature of the interviews" and noting that a "number of the [emergency responders] who NIST requested" to speak with "did not volunteer to be interviewed").

Cole argues that because the interviewees provided their testimony to multiple governmental bodies, rather than to NIST alone, they fall outside the purview of § 7306(c).  Pl.'s Br. at 15.  But the statutory text explicitly forbids NIST as well as "any [other] agency receiving information" from disclosing it once the NIST Director "finds that the disclosure of the information would inhibit the voluntary provision of that type of information."  15 U.S.C. § 7306(c).  Nothing in the plain language of the National Construction Safety Team Act indicates that this exemption applies only to information provided to NIST alone, as opposed to information simultaneously provided to other governmental bodies.

Cole also contends that the interviews were not "voluntarily provided" because these various current and former state government employees had a preexisting legal duty to report the information they divulged in the interviews.  Pl.'s Br. at 15–16.  But any duty to report arising out of these individuals' government employment would not have been owed to any entity

beyond the state and municipal governments that employed them.  *See U.S. ex rel. Long v. SCS Bus. & Technical Inst.*, 999 F. Supp. 78, 89 (D.D.C. 1998); *rev'd on other grounds*, 173 F.3d 870 (D.C. Cir. 1999) (state employee's information was "voluntarily provided" to federal agency because employee had "no duty to report . . . to federal authorities").  Indeed, New York City limited the federal investigators' access to its employees by imposing a maximum on the number of responders NIST could interview, *see* Defs.' Statement of Facts ¶¶ 7–8.

Finally, these interviews were "not directly related to the building failure being investigated," as § 7306(c) requires.  Eyewitness observations about the sights and sounds observed on September 11 may give rise to various inferences about the structural factors that ultimately caused the towers to fall.  But such observations are not "directly related" to the building failures in the sense that they shed direct light on the complex engineering questions surrounding the collapse of multiple skyscrapers.  The focus of the interviews in question was the emergency response and the evacuation procedures employed on September 11, 2001, *see* Fletcher Decl. ¶¶ 13–14; Pl.'s Statement of Facts ¶ 18, not the details concerning the structural integrity of the buildings being evacuated.  Because the National Construction Safety Team Act qualifies as an Exemption 3 withholding statute and the seven interviews withheld under Exemption 3 satisfy the criteria of § 7306(c), the Act exempts them from disclosure, and the notes concerning these interviews were properly withheld in full.  *See, e.g., Quick*, 775 F. Supp. 2d at 179–181 (withholding thousands of nonexempt records in full under FOIA Exemption 3 and the NCSTA).

### C.  FOIA Exemption 6

NIST relies on FOIA Exemption 6 to justify nondisclosure of a single set of notes—those regarding an interview with a private employee of Salomon Smith Barney.  Pl.'s Statement of

Facts ¶¶ 16–17.[4]  Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  When evaluating an Exemption 6 withholding, courts must balance the privacy interests implicated by the records sought against the public interest in their disclosure.  *See Judicial Watch*, 449 F.3d at 153; *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874, 879 (D.C. Cir. 1989).  If the agency identifies "a *substantial* privacy interest" to be protected, courts weigh that interest against the "only relevant public interest," which is "the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to."  *Jurewicz v. U.S. Dep't of Agriculture*, 741 F.3d 1326, 1332 (D.C. Cir. 2014) (internal quotations omitted) (emphasis added).

To the extent that the notes of this interview reflect personal details about the interviewee's subjective reactions to the events of September 11, 2001, or reveal the identity of the interviewee or other witnesses to those events, the privacy interests in those notes are more than substantial.  This interviewee, a private citizen, was a victim in the September 11 attacks, and nothing in the record indicates that he expected his voluntary testimony would become public.  It is "common sense" that "victim allegation statements [are] privacy-related" because "crime reports and statements by victims[] can be of the most private nature."  *Bagwell v. U.S. Dep't of Educ.*, 183 F. Supp. 3d 109, 129 (D.D.C. 2016).

Against these privacy interests, Cole asserts the public's interest in learning that NIST "spent millions of taxpayers' dollars but failed to detect the actual cause of these building

---

[4] As noted, NIST also cites FOIA Exemption 6 in support of its redaction of a Port Authority employee's title in the notes for Interview 1.  Pl.'s Statement of Facts ¶¶ 10, 14; Defs.' Statement of Facts ¶ 27.  Cole does not challenge this minor redaction.  *See* Pl.'s Br. at 16–21.

collapses, with the result being that the FBI is not even investigating the crimes involved in placing explosives in these buildings let alone getting the perpetrators off the streets."  Pl.'s Reply at 13.  Because the asserted public interest is outweighed by the substantial privacy interests at stake, Exemption 6 properly applies.

Nonetheless, the Court has an "affirmative duty" to determine "*sua sponte*," *Juarez v. Dep't of Justice*, 518 F.3d 54, 60 (D.C. Cir. 2008) (internal quotation marks omitted), whether "[a]ny reasonably segregable portion of a record" can "be provided to any person requesting such record after deletion of the portions which are exempt," 5 U.S.C. § 552(b).  The FOIA segregability analysis concentrates on whether the nonexempt portions of the document are "inextricably intertwined with exempt portions."  *See Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) (citing 5 U.S.C. § 552(b) and *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)).

Based on the current record, NIST has not clearly established that the exempt and nonexempt portions of Interview 1041704 are "inextricably intertwined" such that "it would be impossible to produce meaningful information while redacting the exempt portions."  *Kwoka v. I.R.S.*, No. 17-cv-1157, 2018 WL 4681000, at *4 (D.D.C. Sept. 18, 2018).  Missing from the record is an adequate explanation as to why NIST is unable to redact identifying personal information and disclose objective, empirical observations that do not intrude on privacy interests.  Instead, NIST simply insists, in conclusory fashion, that it "conducted a line-by-line review of [Interview 1041704] to identify information exempt from disclosure" and "concluded that there [was] no reasonably segregable non-exempt portions of this record."  Fletcher Decl. ¶ 26.  Given the conclusory nature of NIST's explanation, the Court will deny its motion for summary judgment with respect to the interview notes of Interview 1041704 and direct the

14

agency to provide a supplemental declaration explaining why it cannot segregate and disclose portions of the notes that do not implicate substantial privacy interests.

### D.  Motion for Discovery

As an alternative to summary judgment, Cole moves for discovery to substantiate his objections to the searches that NIST performed and the exemptions it claimed.  *See* Pl.'s Mot. for Summ. J.  "Discovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains."  *Baker & Hostetler LLP*, 473 F.3d at 318 (internal quotation marks omitted).  When an agency's declarations are insufficient to establish an adequate search, courts "generally will request that an agency supplement its supporting declarations" instead of ordering discovery. *Landmark Legal*, 959 F. Supp. 2d at 183 (internal quotation marks omitted).  Limited discovery is typically only permitted when the agency has acted in bad faith, such as in cases where there has been extreme delay or evidence of wrongdoing.  *Id.* at 184.

Cole contends that NIST acted in bad faith because NIST never turned over the audio records and verbatim transcriptions that Cole believes must exist and because NIST engaged in "extreme delay" in processing his request.  Pl.'s Br. at 23–26.  As discussed, *supra* pp. 7–10, NIST conducted an adequate search.  And there is no evidence of extreme delay.  NIST sent its first response to Cole less than two months after his initial request, supplied a second responsive record along with its final response another four months later, and spent the intervening months searching through files, computers, and storage areas.  Pl.'s Statement of Facts ¶¶ 7, 10, 14; Defs.' Statement of Facts ¶¶ 20, 24, 27–28.  In addition, Cole has failed to submit an affidavit in support of his discovery motion—let alone one that (1) "outline[s] the particular facts [the non-movant] intends to discover and describe why those facts are necessary to the litigation"; (2)

"explain[s] why [the non-movant] could not produce the facts in opposition to the motion for summary judgment"; and (3) "show[s] the information is in fact discoverable," as Circuit precedent requires. *United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26 (D.C. Cir. 2014) (quoting *Convertino*, 684 F.3d at 99–100). Because there is no evidence that NIST has acted in bad faith, the Court will not order discovery.

## CONCLUSION

For the foregoing reasons, NIST's motion for summary judgment is granted in part and denied in part, and Cole's cross-motion for summary judgment and motion for discovery in the alternative is denied in part. A separate order consistent with this decision accompanies this memorandum opinion.

August 27, 2020

DABNEY L. FRIEDRICH
United States District Judge

16