UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID COLE,<br><br>*Plaintiff*,<br><br>v.<br><br>JAMES K. OLTHOFF,[1] Acting Director,<br>National Institute for Standards and<br>Technology, *et al.*,<br><br>*Defendants*. | No. 19-cv-1070 (DLF) |

## MEMORANDUM OPINION

David Cole brings this lawsuit against the National Institute for Standards and Technology and its acting director, James Olthoff (collectively, NIST), under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, *et seq.* Before the Court is NIST's Renewed Motion for Summary Judgment, Dkt. 23, and Cole's Renewed Motion for Summary Judgment, Dkt. 26. For the reasons that follow, the Court will grant NIST's motion and deny Cole's motion.

## I. BACKGROUND[2]

In 2002, NIST launched an investigation into the collapse of the World Trade Center buildings under the authority of the National Construction Safety Team Act, 15 U.S.C. § 7301, *et seq.*, a statute that empowers NIST to investigate major building failures. Defs.' Statement of

---

[1] When this suit began, Walter Copan was the Director of the National Institute for Standards and Technology. When James Olthoff became the Acting Director, he was automatically substituted as the proper defendant. *See* Fed. R. Civ. P. 25(d).

[2] This section includes only those facts that are relevant to the motions before the Court, as the facts and procedural history of this case are laid out at length in the Court's initial opinion. *See* Mem. Op. of Aug. 27, 2020 (Mem. Op.) at 1–4, Dkt. 20.

1

Facts ¶¶ 2–4, Dkt. 23-1. As part of that investigation, NIST performed 116 first-person interviews, in which interviewees described their experiences and answered questions posed by NIST officials and the National Commission on Terrorist Acts Upon the United States (the 9/11 Commission) concerning emergency operations, building issues, and safety problems related to the World Trade Center buildings. *Id.* ¶¶ 7–9. While portions of these interviews concerned the eyewitnesses' firsthand observations of the collapse of the towers, the interviews were focused primarily on emergency response and the evacuation procedures. *See* Mem. Op. at 2. NIST later published multiple reports that cited and quoted from notes taken during these interviews. Defs.' Statement of Facts ¶¶ 11–12; Mem. Op. at 2.

On January 26, 2010, then-Director of NIST Patrick Gallagher issued a series of findings, pursuant to section 7(c) of the National Construction Safety Team Act, concluding that the disclosure of notes or other materials documenting interviews with FDNY, NYPD, and other New York City employees "would inhibit the voluntary provision of that type of information in this and future investigations." Fletcher Decl. ¶¶ 15–19, Dkt. 9-3. Gallagher made the same finding with respect to Salomon Smith Barney employees on October 17, 2008. *See* Supp. Fletcher Decl. ¶ 11, Dkt. 21-1.

In 2011, David Cole submitted a FOIA request to NIST for records corresponding to interviews referenced in one of the NIST reports. Defs.' Statement of Facts ¶ 13. After conducting searches in response to Cole's request, NIST gathered nine sets of notes relating to those interviews, provided notes from a single interview with one redaction, and withheld in full notes from the other eight interviews. *See* Mem. Op. at 3. The agency initially invoked FOIA Exemption 3, section 7(c) of the National Construction Safety Team Act, and the NIST Director's findings as the basis for withholding these eight sets of notes. *See id.* But NIST later

2

acknowledged that "[d]ue to an oversight, the Director of NIST" had not made a finding under the National Construction Safety Team Act with respect to *former* employees of Salomon Smith Barney. *See* Fletcher Decl., Ex. 8 at 3; Supp. Fletcher Decl. ¶¶ 13–16. Nonetheless, NIST withheld the notes from Interview 1041704, an interview with the former security manager of Salomon Smith Barney, under FOIA Exemption 6, rather than Exemption 3. *See* Defs.' Statement of Facts ¶ 21; *see also* Mem. Op. at 3–4.

On August 27, 2020, the Court issued an opinion and order concerning the parties' initial motions for summary judgment. *See generally* Mem. Op.; Order, Dkt. 19. With respect to the notes from Interview 1041704, the Court concluded that Exemption 6 applied, as the "substantial privacy interests at stake" outweighed the plaintiff's "asserted public interest" in disclosure. *Id.* at 13–14. However, based on the record before the Court, "NIST ha[d] not clearly established that the exempt and nonexempt portions of Interview 1041704 are inextricably intertwined such that it would be impossible to produce meaningful information while redacting the exempt portions." *Id.* (internal quotation marks omitted). Accordingly, the Court denied NIST's motion in part and "direct[ed] the agency to provide a supplemental declaration explaining why it could not segregate and disclose portions of the notes that do not implicate substantial privacy interests." *Id.* at 14–15.

On September 9, 2020, then-Director of NIST Walter Copan issued a finding pursuant to section 7(c) of the National Construction Safety Team Act, concluding that the disclosure of notes or other materials documenting NIST's interviews with "employees *or former employees* of Salomon Smith Barney" would "inhibit the voluntary provision of that type of information in this and future investigations." Defs.' Statement of Facts ¶¶ 24–25 (emphasis added). And on September 17, 2020, NIST informed both Cole and the Court that, in light of this finding, it was

3

now relying on Exemption 3 as an additional basis for withholding in full the notes from Interview 1041704. *Id.* ¶ 26. Both parties then filed renewed motions for summary judgment, *see* Defs.' Renewed Mot. for Summ. J.; Pl.'s Renewed Mot. for Summ. J., which are now ripe for review.

## II. LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a federal agency moves for summary judgment in a FOIA case, the court views all facts and inferences in the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA. *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

To prevail under Rule 56, a federal agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam) (internal quotation marks omitted). The agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents," *Krikorian v. Dep't of State*, 984 F.2d 461, 468 (D.C. Cir. 1993) (internal quotation marks omitted), and must also explain why any of the nine enumerated exemptions listed in 5 U.S.C. § 552(b) applies to withheld information, *Judicial Watch, Inc. v. Food & Drug Admin*, 449 F.3d 141, 147 (D.C. Cir. 2006); *see also Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015) (agency bears burden of justifying application of exemptions, "which are exclusive and must be narrowly construed").

"The peculiarities inherent in FOIA litigation, with the responding agencies often in sole possession of requested records and with information searches conducted only by agency personnel, have led federal courts to rely on government affidavits to determine whether the statutory obligations of the FOIA have been met." *Perry*, 684 F.2d at 126. Agency affidavits are entitled to a presumption of good faith, *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and a court may grant summary judgment based on an affidavit if it contains reasonably specific detail and neither contradictory record evidence nor evidence of bad faith calls it into question, *see Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013). The "vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

## III. ANALYSIS

### A. Forfeiture

As a threshold matter, Cole contends that NIST has forfeited the right to assert Exemption 3 as a justification for withholding the notes from Interview 1041704 because it violated the "*Maydak* timeliness rule." Pl.'s Reply at 6, 10–12, Dkt. 33. In *Maydak v. U.S. Department of Justice*, the D.C. Circuit held that, "as a general rule, [the government] must assert all exemptions at the same time, in the original district court proceedings." 218 F.3d 760, 764 (D.C. Cir. 2000). Merely "referenc[ing]" the possibility that other exemptions might apply is insufficient to preserve the issue on appeal. *Id.* at 765.

Although "the Government generally waives any FOIA exemption it fails to raise at the initial proceedings before the district court," *August v. FBI*, 328 F.3d 697, 698 (D.C. Cir. 2003), "neither *Maydak* nor any other D.C. Circuit precedent directly govern[s] the late assertion of FOIA exemptions during the pendency of district court proceedings," *Shapiro v. U.S. Dep't of*

5

*Just.*, No. 13-cv-555, 2020 WL 7318014, at *5 (D.D.C. Dec. 11, 2020); *see also Lazaridis v. U.S. Dep't of Just.*, 713 F. Supp. 2d 64, 70 n.7 (D.D.C. 2010). Instead, the "district court retains the discretion to find that such an untimely assertion has been forfeited." *Shapiro v. U.S. Dep't of Just.*, No. 13-cv-555, 2016 WL 3023980, at *4 (D.D.C. May 25, 2016). Courts typically find the government has forfeited the right to claim an exemption when an agency asserts the exemption for the first time only *after* the district court has already ruled in the other party's favor, such as, for instance, in a motion for reconsideration. *See, e.g.¸ Judicial Watch, Inc. v. U.S. Dep't of Energy*, 319 F. Supp. 2d 32, 35 (D.D.C. 2004). That is not the case here.

But even if the Court exercised its discretion and required the "government to make some threshold showing of good cause to avoid a finding of forfeiture," *Shapiro*, 2020 WL 7318014, at *5 (internal quotation marks omitted), NIST has adequately done so. As NIST explained at the outset of this litigation, it failed to invoke Exemption 3 with respect to the notes from Interview 1041704 because the NIST Director's 2008 finding unintentionally omitted former Salomon Smith Barney employees "[d]ue to an oversight." *See* Fletcher Decl., Ex. 8 at 3. And NIST invoked Exemption 3 shortly after the NIST Director issued a supplemental finding to address this error. Defs.' Statement of Facts ¶¶ 24–26. The delay was "the result of a reasonable mistake, rather than an attempt to gain a tactical advantage over the FOIA requester," *August*, 328 F.3d at 698, or an effort to employ a "cat and mouse strategy," *see* Pl.'s Reply at 10. Indeed, Cole has had an opportunity to fully respond to NIST's Exemption 3 argument, and the D.C. Circuit has allowed agencies to make exemption claims on appeal for the first time in somewhat analogous circumstances. *See, e.g.*, *August*, 328 F.3d at 698 (concluding additional FOIA exemption claims were not waived where "wholesale disclosure would jeopardize the safety and privacy of third parties involved in the FBI's investigation" and the "failure to invoke all

6

applicable exemptions in the original district court proceedings was the result of a reasonable mistake"); *see also Maydak*, 218 F.3d at 767 (recognizing that additional FOIA exemption claims may not be waived when, because of "pure human error, the government failed to invoke the correct exemption and will have to release information compromising national security or sensitive, personal, private information"). NIST has therefore not forfeited its ability to assert Exemption 3 with respect to the notes of Interview 1041704.

### B. Exemption 3

FOIA Exemption 3 permits the nondisclosure of materials that are "specifically exempted from disclosure by [another] statute" so long as that statute "requires that . . . matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A). "To withhold records under Exemption 3, an agency must make two showings: 'that the statute is one of exemption as contemplated by Exemption 3,' and 'that the withheld material falls within the statute.'" *Corley v. U.S. Dep't of Just.*, No. 19-cv-5106, 2021 WL 2197725, at *2 (D.C. Cir. June 1, 2021) (quoting *Larson v. U.S. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) (alterations omitted)).

NIST relies on section 7 of the National Construction Safety Team Act. *See* 15 U.S.C. § 7306. As the Court has previously held, "the National Construction Safety Team Act qualifies as a withholding statute under FOIA Exemption 3." *See* Mem. Op. at 10; *see also Quick v. U.S. Dep't of Commerce*, 775 F. Supp. 2d 174, 180 (D.D.C. 2011) (finding that withholding under the National Construction Safety Team Act is a "straightforward application of FOIA Exemption 3").

The notes of Interview 1041704 also fall within the statute. 15 U.S.C. § 7306(c) prohibits "any agency receiving information from a Team or the National Institute of Standards and Technology" from disclosing "voluntarily provided safety-related information if that information is not directly related to the building failure being investigated and the Director finds that the disclosure of the information would inhibit the voluntary provision of that type of information." 15 U.S.C. § 7306(c). Like the notes from the other interviews that Cole requested, *see* Mem. Op. at 10–12, the notes from Interview 1041704 satisfy § 7306(c)'s criteria.

First, NIST's Director has exercised his authority pursuant to this section to find that disclosure of interviews with "employees or former employees of Salomon Smith Barney" would "inhibit the voluntary provision of that type of information in this and future investigations." Defs.' Statement of Facts ¶¶ 24–25; *see also* Supp. Fletcher Decl., Ex. 1 (making this finding with respect to current employees of Salomon Smith Barney in October 2008). Second, this interview constituted "voluntarily provided safety-related information," 15 U.S.C. § 7306(c), as the interviewee "consented to testify before NIST, the 9/11 Commission, and the City of New York concerning the emergency operations, building issues, and safety issues surrounding the 9/11 emergency response." Mem. Op. at 11 (internal quotation marks omitted). And third, as § 7306(c) requires, the interview was "not directly related to the building failure being investigated," because it was focused on the emergency response and the evacuation procedures employed on September 11, 2001, *see* Fletcher Decl. ¶¶ 13–14, rather than the details regarding the structural integrity of the buildings being evacuated, *see* Mem. Op. at 12.

Cole resists this conclusion by contending that NIST cannot rely on the NIST Director's finding regarding former employees of Salomon Smith Barney because it was made after Cole submitted his FOIA request. *See* Pl.'s Mem. in Supp. of Renewed Mot. for Summ. J. (Pl.'s

8

Mem.) at 11–12, Dkt. 26-1. But while an agency must demonstrate that the withholding statute it invokes in conjunction with Exemption 3 "was in effect at the time of the request," *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1284 (D.C. Cir. 1983); *see also Hunt v. Commodity Futures Trading Comm'n,* 484 F. Supp. 47, 49 n.1 (D.D.C. 1979) (explaining that an agency must apply the criteria of the withholding statute "in effect at the time of the request"), neither Exemption 3 nor § 7306(c) preclude NIST from relying on findings made after a plaintiff's FOIA request was submitted, *see, e.g.*, *Quick*, 775 F. Supp. 2d at 178–82 (concluding an agency properly withheld records under Exemption 3 on the basis of an National Construction Safety Team Act finding made after the plaintiff's FOIA request was submitted). And Cole has put forth no evidence to support his assertion that NIST has acted in "bad faith," *see* Pl.'s Mem. at 10–11, or to rebut the declarations that NIST has submitted, which attest that the omission of former Salomon Smith Barney employees from the NIST Director's prior finding was the product of "an oversight," Fletcher Decl., Ex. 8 at 3; Supp. Fletcher Decl. ¶ 19; *see also supra*, at 6–7.[3]

Alternatively, Cole asks that the Court conduct an *in camera* review of the notes of Interview 1041704 to determine whether they contain information "directly related to the building failure being investigated" so that "[a]ny content" from these notes "that explicitly refers to explosions or any potential use of explosives at the WTC on 9/11" can be segregated and produced. Pl.'s Mem. at 14, 17. But, as with the other records that Cole requested, NIST properly withheld the notes in full because the National Construction Safety Team Act qualifies

---

[3] Because NIST properly withheld the notes from Interview 1041704 in full under Exemption 3, the Court need not address the parties' arguments regarding Exemption 6. Nor does the Court address Cole's argument that he is entitled to "at least a partial award" of attorney's fees and costs under 5 U.S.C. § 552(a)(4)(E), Pl.'s Mem. at 23, because Cole clarified in his reply brief that he is not seeking an award of fees at this time, *see* Pl.'s Reply at 22.

as an Exemption 3 withholding statute and the notes satisfy the criteria of § 7306(c). Mem. Op. at 12; *see, e.g.*, *Quick*, 775 F. Supp. 2d at 179–181 (permitting agency to withhold thousands of nonexempt records *in full* under FOIA Exemption 3 and the National Construction Safety Team Act); *see also Larson*, 565 F.3d at 870 ("If the agency's affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents.") (internal quotation marks omitted). Given that the record demonstrates that the notes of Interview 1041704 meet the criteria of § 7306(c) and there is no evidence of agency bad faith, the Court declines Cole's request to conduct an *in camera* review.

## CONCLUSION

For the foregoing reasons, NIST's renewed motion for summary judgment is granted, and Cole's renewed motion for summary judgment is denied. A separate order consistent with this decision accompanies this memorandum opinion.

June 22, 2021

DABNEY L. FRIEDRICH
United States District Judge